LEELANAU COUNTY SHERIFF v KIESSEL

Docket No. 302195. Submitted May 10, 2012, at Marquette. Decided
     July 5, 2012, at 9:00 a.m. Leave to appeal denied, 493 Mich 877.
     The Leelanau County Sheriff and Leelanau County brought an
     action in the Leelanau Circuit Court seeking a writ of superin-
     tending control vacating an order of the Leelanau County Pros-
     ecuting Attorney, who was serving as a hearing officer under the
     veteran's preference act (VPA), MCL 35.401 et seq. The sheriff had
     terminated James Kiessel from his position as a deputy sheriff
     because of alleged misconduct in the performance of his duties.
     Kiessel filed a counterclaim seeking a writ of mandamus ordering
     the county and the sheriff to comply with the prosecutor's order.
     Kiessel, an honorably discharged veteran, had requested a hearing
     regarding his termination before the prosecutor under the VPA.
     Following the hearing, the prosecutor concluded that Kiessel had
     not engaged in official misconduct or serious or willful neglect in
     the performance of his duties and ordered the sheriff to reinstate
     Kiessel to his position with full back pay and benefits. In the
     circuit court, the county and the sheriff asserted for the first time
     that the prosecutor was without jurisdiction to order the sheriff to
     hire, fire, or reinstate a deputy. The court, Thomas G. Power, J.,
     remanded the matter to the prosecutor for the prosecutor's
     consideration of the jurisdictional issue. On remand, the prosecu-
     tor upheld his own jurisdiction and confirmed his original ruling.
     The circuit court disagreed, concluding that the sheriff's power to
     appoint and revoke the appointment of deputies was of constitu-
     tional magnitude and could not be overridden by the VPA. Accord-
     ingly, the circuit court vacated the orders issued by the prosecutor.
     Kiessel appealed.
          The Court of Appeals *held*:
          1. The appellant is responsible for securing the filing of tran-
     scripts as required under MCR 7.210(B)(1)(a). Kiessel's initial
     failure to file the full transcripts of the circuit court proceedings
     did not result in his waiver of the right to appellate review given
     that the full transcripts of the circuit court proceedings were
     ultimately provided, the transcripts initially omitted were not
     relevant to the issues on appeal, the transcripts initially omitted

were not necessary for review of the issues by the Court of Appeals, and the transcripts of the hearing before the prosecutor were part of the record before the Court of Appeals.

2. Article 7, § 4 of the Michigan Constitution confers on the Legislature the authority to prescribe the duties and powers of a sheriff. It does not preclude the Legislature from limiting a sheriff's authority to discharge deputies at will. The VPA provides that honorably discharged veterans may be removed, transferred, or suspended from employment in a public department or public works only for cause, after written notice and a hearing, which—with respect to county employees—must occur before the prosecuting attorney. The only statutory exceptions under the VPA concern heads of departments, members of commissions, and boards and heads of institutions appointed by the Governor, officers appointed directly by the mayor of a city under the provisions of a charter, and first deputies of such heads of departments, heads of institutions, and officers. For the purposes of the VPA, a "public department" is a division of official duties or functions, a branch of government, or a distinct part of a governmental organization. A sheriff's department is an agency of the county and is, thus, a public department under the VPA. MCL 51.70 states that each sheriff may appoint one or more deputies at the sheriff's pleasure and may revoke those appointments at any time. Because the exception to the VPA for first deputies—the existence of which implies that regular deputies are covered by the VPA—was enacted after MCL 51.70, the last enacted substantive provision, the VPA as amended by 1931 PA 67, controls. This is so because the Legislature is aware of the existence of the law in effect at the time of its enactments and recognizes that, because one Legislature cannot bind the power of its successor, existing statutory language cannot be a bar to further exceptions set forth in subsequent, substantive enactments. The fact that the VPA is a remedial statute intended to benefit honorably discharged veterans also militates in favor of its application to deputy sheriffs. When offices which have a known common-law legal character are established in the Michigan Constitution, the Legislature cannot retain the names but destroy the powers of such offices or change the duties of the office so as to practically change the office. The office of sheriff is a constitutional office. However, the power to discharge without cause is not essential to the common-law legal character of a sheriff, is not inherent, and is subject to statutory limitation under the VPA. The constitutional principle of the separation of powers does not apply to one executive branch officer reviewing whether another executive branch officer has complied with the VPA limitation on the removal, transfer, or suspension of

honorably discharged veterans. In this case, both the prosecutor and the sheriff belonged to the executive branch of government and no constitutional violation occurred when the prosecutor reviewed the sheriff's actions. Thus, the circuit court erred when it held that the prosecuting attorney lacked jurisdiction to review the sheriff's termination of Kiessel. Although a sheriff's power to hire, fire, and discipline is not absolute, the matter of which of the sheriff's deputies shall be delegated the powers of law enforcement entrusted to the sheriff by the Constitution is a matter entirely within the sheriff's discretion and inherent in the nature of the office, and may not be infringed on by the Legislature nor delegated to a third party. Any order of reinstatement must recognize the discretion vested in the sheriff.

Writ of superintending control vacated; case remanded to the circuit court for consideration of the merits of the appeal of the prosecutor's order.

1. SHERIFFS AND CONSTABLES — VETERAN'S PREFERENCE ACT — DEPUTY SHERIFFS — APPLICABILITY.

The veteran's preference act protects deputy sheriffs, other than the first deputy, from termination absent cause, notice, and a hearing (MCL 35.401 *et seq.*, MCL 51.70).

2. SHERIFFS AND CONSTABLES — LAW ENFORCEMENT POWERS — DELEGATION — DEPUTY SHERIFFS.

Although a sheriff's power to hire, fire, and discipline is not absolute, the matter of which of the sheriff's deputies shall be delegated the powers of law enforcement entrusted to the sheriff by the Constitution is a matter entirely within the sheriff's discretion and inherent in the nature of the office, and may not be infringed on by the Legislature nor delegated to a third party (Const 1963, art 7, § 4).

*Cohl, Stoker & Toskey, P.C.* (by *Bonnie G. Toskey*), for the Leelanau County Sheriff and Leelanau County.

*Michael H. Dettmer, William R. Rastetter,* and *Katherine E. Redman* for James Kiessel.

Amicus Curiae:

*Abbott Nicholson, P.C.* (by *John R. McGlinchey* and *Kristen L. Baiardi*), for the Michigan Sheriffs' Association.

Before: MARKEY, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM. Defendant James Kiessel appeals by right a circuit court order granting plaintiffs the Leelanau County Sheriff and Leelanau County a writ of superintending control vacating an order of the Leelanau County Prosecuting Attorney (PA), who was serving as a hearing officer under the veterans preference act (VPA), MCL 35.401 *et seq.* The PA's order had directed the sheriff to reinstate Kiessel, with back pay, as a deputy. The circuit court held that the PA lacked jurisdiction under the VPA to review the sheriff's discharge of Kiessel, an honorably discharged veteran, because under MCL 51.70, deputies serve at a sheriff's pleasure. We hold, for the reasons discussed hereafter, that the VPA does authorize the PA to review the sheriff's discharge of Kiessel and, if appropriate, to order his "reinstatement at the same rate of pay received by him at the date of dismissal," with back pay. MCL 35.402. But any order of reinstatement must recognize the discretion vested in the sheriff regarding the manner in which the duties of the office are fulfilled, including the delegation of law enforcement powers. See *Fraternal Order of Police, Ionia Co Lodge No. 157 v Bensinger*, 122 Mich App 437, 445-446; 333 NW2d 73 (1983); *Labor Mediation Bd v Tuscola Co Sheriff*, 25 Mich App 159, 164; 181 NW2d 44 (1970). Accordingly, we vacate the writ of superinteding control and remand to the circuit court to consider in the first instance the merits of plaintiffs' appeal of the PA's order.

### I. KIESSEL DID NOT WAIVE APPELLATE REVIEW

We first reject plaintiffs' argument that Kiessel waived appellate review by failing to furnish, as required by MCR 7.210(B)(1)(a), the complete transcripts

of the VPA proceedings and a hearing held on October 25, 2010, when the circuit court remanded this case to the PA to consider the jurisdictional question at issue in this appeal. Plaintiffs contend that the failure to file the "full transcript," whether relevant or not to the issues on appeal, constitutes a waiver of appellate review. See, e.g., *Reed v Reed*, 265 Mich App 131, 160-161; 693 NW2d 825 (2005), and *Nye v Gable, Nelson & Murphy*, 169 Mich App 411, 413-414; 425 NW2d 797 (1988).

Kiessel argues that he has now complied with MCR 7.210(B)(1)(a) by providing transcripts of all proceedings in the circuit court. He further contends that the failure to initially file some transcripts should not constitute a waiver of his right to appeal because the missing transcripts were not relevant to the issues on appeal. Kiessel also asserts that the issues on appeal present legal questions that this Court reviews de novo, and the omitted transcripts are not necessary for this Court's review. Additionally, he notes that the VPA hearing transcripts are part of the circuit court record before this Court.

We find Kiessel's arguments have merit and conclude that he has not waived his right to appellate review.

## II. FACTS AND PROCEEDINGS

On October 30, 2009, the elected Sheriff of Leelanau County, Michael Olstersdorf, terminated Kiessel from his position as a deputy sheriff with the rank of sergeant for "severe misconduct" in the arrest of two persons.[1] The parties agree that Kiessel is an honorably

---

[1] One person was arrested for obstructing police, but the PA declined to prosecute because he concluded that the arrested person could lawfully refuse, under the Fourth Amendment, Kiessel's oral command to produce that person's son from within their home. In his VPA ruling, the PA found that "Kiessel was incorrect in arresting [the person] under these

discharged veteran under Michigan law who would ordinarily have a right under the VPA to a hearing regarding his discharge. MCL 35.401; MCL 35.402. Kiessel timely requested a hearing before the statutory hearing officer, Leelanau County Prosecutor Joseph T. Hubbell, naming both the sheriff and the county as respondents. After a three-day hearing, the PA issued a lengthy opinion and order on May 12, 2010, finding that Kiessel's conduct did not constitute "official misconduct" or "serious or willful neglect in the performance of duty" under MCL 35.402 and ordering the sheriff to reinstate Kiessel to his position with full back pay and benefits.

Plaintiffs timely filed a complaint for a writ of superintending control in the circuit court, asserting among other reasons for the issuance of a writ that the PA was without jurisdiction to order an elected sheriff to hire, fire, or reinstate any deputy, and also was without jurisdiction to order the county to provide back pay to a discharged deputy.[2] Specifically, plaintiffs asserted that the sheriff's constitutional authority, Const 1963, art 7, §§ 4 and 6, and statutory authority to appoint deputies, MCL 51.70, superseded the authority the VPA granted to the PA under MCL 35.402. At a circuit court hearing on June 28, 2010, plaintiffs' counsel conceded this issue had not been raised before the PA. The circuit court ruled it would remand the matter to the PA to consider in the first instance whether the PA had subject matter jurisdiction of Kiessel's claim for reinstatement under the VPA. The court entered its order of remand on July 19, 2010.

---

circumstances, [but] . . . this error in judgment is not the result of bad motives or malfeasance by Kiessel, but rather, the error was directly attributable to the lack of training he received while employed at the Sheriff Department [sic]."

[2] Kiessel filed a counterclaim for mandamus to enforce the PA's ruling.

On September 17, 2010, the PA issued another opinion and order, upholding his own jurisdiction under the VPA, confirming his original ruling in favor of Kiessel, and again ordering the sheriff to reinstate Kiessel with back pay. Alternatively, the PA ruled he had authority under the VPA to order the county, as Kiessel's coemployer, to reinstate Kiessel with back pay.

The circuit court heard oral arguments on the jurisdictional issue on November 12, 2010, and concluded that deputy sheriffs did not fall within the provisions of the VPA. The court reasoned that a sheriff's "power to appoint and revoke law enforcement powers . . . override all statutory and contract rights of the deputy." The court noted that although the sheriff's power to appoint and revoke the appointment of deputies was codified in MCL 51.70, it was of "constitutional magnitude and therefore cannot be overridden by a statute such as the Veterans Preference Act or any other statute." The circuit court also relied on *Abt v Wilcox*, 264 Mich 183; 249 NW 483 (1933), which held that the VPA does not protect a deputy appointed by a sheriff whose term has expired when a newly elected sheriff fails to reappoint the deputy. The circuit court reasoned that because the VPA does not apply to end-of-term reappointments, the sheriff's exercise of the plenary authority under MCL 51.70 was not subject to review under the VPA in other situations.

On December 9, 2010, the circuit court entered its order providing that "for the reasons stated on the record," the two orders the PA had issued regarding Kiessel "are hereby vacated." The same order denied Kiessel's motions for summary disposition. The circuit court denied reconsideration on January 10, 2011. Kiessel appeals by right.

III. ANALYSIS

This case presents issues of constitutional and statutory interpretation, which are both questions of law this Court reviews de novo. *Niles Twp v Berrien Co Bd of Comm'rs*, 261 Mich App 308, 312; 683 NW2d 148 (2004). MCL 51.70, on which the circuit court and plaintiffs rely, provides in pertinent part: "Each sheriff may appoint 1 or more deputy sheriffs at the sheriff's pleasure, and may revoke those appointments at any time." By its plain terms this provision contains no limit on the discretion of the sheriff to appoint and revoke the appointment of deputy sheriffs. But Kiessel argues that the VPA limits MCL 51.70 by providing that the sheriff may discharge deputies who are also honorably discharged veterans only for just cause.[3]

We first reject plaintiffs' argument that because the sheriff is a constitutional officer the Legislature may not limit the sheriff's common-law or statutory ability to discharge deputies at will. In *Bensinger*, 122 Mich App at 444, this Court noted that "the Legislature may not vary the duties and powers of the sheriff in a way which changes the legal character of the office." But this Court has also held that "the sheriff's power to hire, fire and discipline is not absolute." *Nat'l Union of Police Officers Local 502-M, AFL-CIO v Wayne Co Bd of Comm'rs*, 93 Mich App 76, 89; 286 NW2d 242 (1979). Indeed, our Constitution expressly confers on the Legislature the authority to prescribe the "duties and powers" of the sheriff. Const 1963, art 7, § 4 ("There shall be elected for four-year terms in each organized county a sheriff . . . whose duties and powers shall be

[3] The VPA provides that honorably discharged veterans may be removed, suspended, or transferred for "official misconduct, habitual, serious or willful neglect in the performance of duty, extortion, conviction of intoxication, conviction of felony, or incompetency . . . ." MCL 35.402.

provided by law."). Moreover, the Legislature has the authority to alter or abolish the common law. Const 1963, art 3, § 7; *Hinojosa v Dep't of Natural Resources*, 263 Mich App 537, 546; 688 NW2d 550 (2004). Consequently, Michigan's Constitution does not preclude the Legislature from limiting the sheriff's authority to discharge deputies at will, whether that authority emanates from the common law or from statute.

Second, because nothing in the Constitution prevents the Legislature from limiting the sheriff's ability to discharge deputies at will, the issue presented in this case is one solely of statutory interpretation: Did the Legislature intend the VPA as an exception to a sheriff's authority under MCL 51.70 to appoint or remove a deputy at will, or did the Legislature intend that the VPA would not apply to honorably discharged veterans who are appointed sheriff's deputies? Although this is a close question, we conclude that appellant presents the better arguments regarding statutory construction: the Legislature intended the VPA to apply to all public employees who are honorably discharged veterans, including those appointed to the position of deputy sheriff.

While each party argues their side should prevail because the statute on which they rely is specific and the other general, the fact remains that the pertinent part of MCL 51.70 authorizing the sheriff to appoint deputy sheriffs and to revoke those appointments "at his pleasure," 1846 RS, ch 14, § 70 (amended 1847 PA 105, § 4), or "at any time," according to the modern version of MCL 51.70 as amended by 1978 PA 635, has remained essentially unchanged since its adoption in 1846. See *Local 1518, Council No 55, American Federation of State, Co & Muni Employees, AFL-CIO v St Clair Co Sheriff*, 407 Mich 1, 7; 281 NW2d 313 (1979). The

Legislature is presumed to be fully aware of both the common law, *Walters v Leech*, 279 Mich App 707, 710; 761 NW2d 143 (2008), and existing statutes, *Craig v Detroit Pub Sch Chief Executive Officer*, 265 Mich App 572, 575; 697 NW2d 529 (2005). The Legislature enacted the VPA without an exception for deputy sheriffs. 1897 PA 205; MCL 35.401 *et seq*. Section 2 of the VPA, MCL 35.402, provides that honorably discharged veterans may be removed, transferred, or suspended from public employment only for cause, after written notice and a hearing, which in respect to county employees, must occur before the prosecuting attorney. The only exceptions to these requirements were added to the VPA by 1931 PA 67 for "heads of departments, members of commissions, and boards and heads of institutions appointed by the governor and officers appointed directly by the mayor of a city under the provisions of a charter, and first deputies of such heads of departments, heads of institutions and officers . . . ." These remain the only exceptions to the VPA. MCL 35.402; *Jackson v Detroit Police Chief*, 201 Mich App 173, 175; 506 NW2d 251 (1993).

The fact that the Legislature, pertinent to this case, has exempted only "first deputies" from the VPA logically implies that the VPA applies to other deputies. See *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006). The provision of an exemption for only "first deputies" "eliminates the possibility of their [sic] being other exceptions under the legal maxim *expressio unius est exclusio alterius*." *Id*. This legal maxim means " '[t]he expression of one thing is the exclusion of another.' " *Id*. at 74 n 8, quoting Black's Law Dictionary (7th ed). Because the exception to the VPA for "first deputies"—which implies that regular deputies are protected by the VPA—was enacted after MCL 51.70 (see 1846 RS, ch 14, § 70, as amended by

1847 PA 105, § 4), the last enacted substantive provision, the VPA, as amended by 1931 PA 67, controls. This is so because "the Legislature is aware of the existence of the law in effect at the time of its enactments and recognizes that, since one Legislature cannot bind the power of its successor, existing statutory language cannot be a bar to further exceptions set forth in subsequent, substantive enactments." *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 713; 664 NW2d 193 (2003).

Additionally, the fact that the VPA is remedial in nature—for the benefit of honorably discharged veterans—also militates in favor of its application to sheriffs' deputies.[4] Remedial statutes are to be liberally construed in favor of the persons intended to be benefited. *Empson-Laviolette v Crago*, 280 Mich App 620, 629; 760 NW2d 793 (2008). The VPA was originally enacted for the benefit of Civil War veterans, but over the years was also extended to other honorably discharged veterans who had served this country during time of war or other "emergency condition." MCL 35.61; MCL 35.401; *Beadling v Governor*, 106 Mich App 530, 534-535; 308 NW2d 269 (1981). The VPA "was enacted for the purpose of discharging, in a measure, the debt of gratitude the public owes to veterans who have served in the armed services in time of war, by granting them a preference in original employment and retention thereof in public service." *Valentine v Redford Twp Supervisor*, 371 Mich 138, 145; 123 NW2d 227 (1963). Consequently, because the VPA "was passed for a commendable purpose," *Smith v Flint City Comm,*

---

[4] Cf. *Ellis v Common Council of Grand Rapids*, 123 Mich 567, 569; 82 NW 244 (1900) (referring to the VPA as a "penal statute" not subject to judicial expansion). As explained in *Beadling v Governor*, 106 Mich App 530, 535; 308 NW2d 269 (1981), the *Ellis* decision was superseded by statutory amendment, 1907 PA 329.

258 Mich 698, 700; 242 NW 814 (1932), it "should be liberally construed," *Abt*, 264 Mich at 185.

We also find unpersuasive plaintiffs' suggestion that the sheriff is not a "public department" as that term is used in the VPA. The right to a pre- or postdischarge hearing regarding removal, transfer, or suspension for cause extends only to an honorably discharged veteran "holding an office or employment in any public department or public works of the state or any county, city or township or village of the state . . . ." MCL 35.402. This language has been interpreted to mean all public employees, with the limited exceptions noted already.[5] *Jackson*, 201 Mich App at 175. Soon after the VPA was enacted, our Supreme Court differentiated the terms "public departments" from "public works" as used in the act. *Ellis v Common Council of Grand Rapids*, 123 Mich 567, 569; 82 NW 244 (1900). The Court defined "public department" as " 'a division of official duties or functions; a branch of government; a distinct part of a governmental organization: as, the legislative, executive, and judicial departments; the department of state, of the treasury . . . .' " *Id.* (citation omitted); see also *Beadling*, 106 Mich App at 535. It cannot be disputed that a sheriff and the sheriff's employees, colloquially known as a "sheriff's department," are " 'a distinct part of a governmental organization[.]' " *Ellis*, 123 Mich at 569 (citation omitted). Indeed, plaintiffs argue that a sheriff's common-law authority and prerogatives are so unique that they cannot be trifled with by the Legislature. Consequently, a sheriff and the sheriff's employees—a "sheriff's department"—is a "public department" within the meaning of the VPA because it is "an agency of the county." *Bayer v Macomb Co Sheriff*, 29 Mich App 171, 175; 185 NW2d 40 (1970).

---

[5] Plaintiffs concede this point in their brief on appeal.

As noted already, plaintiffs argue that Const 1963, art 7, § 4 imbues the sheriff as a constitutional officer with common-law powers that the Legislature may not limit, including the authority to discharge deputies at will. In *Allor v Wayne Co Bd of Auditors*, 43 Mich 76; 4 NW 492 (1880), the Court considered the propriety of the city of Detroit's not paying for services rendered by a constable in executing an arrest warrant issued by a justice of peace. The actual question was whether the power of the justices to issue process and the power of constables to serve process could be limited by the Legislature. *Id.* at 97. The Court held that when offices that have a known common-law legal character are established in our Constitution, the Legislature cannot "retain[] the names but destroy[] the powers of such officers" or "change those duties as to practically change the office." *Id.* at 102-103.[6] We applied *Allor* in *Brownstown Twp v Wayne Co*, 68 Mich App 244, 247-248; 242 NW2d 538 (1976):

> The office of sheriff is a constitutional office with duties and powers provided by law. Const 1963, art 7, § 4, *Labor Mediation Board v Tuscola County Sheriff*, 25 Mich App 159, 162; 181 NW2d 44 (1970). . . . The Legislature may vary the duties of a constitutional office, but it may not change the duties so as to destroy the power to perform the duties of the office.

In *Bensinger*, 122 Mich App at 444, citing *Allor* and *Brownstown Twp*, the Court opined "that the office of sheriff has a known legal character and . . . the Legislature may not vary the duties and powers of the sheriff in a way which changes the legal character of the office."

---

[6] *Allor* was overruled in part on other grounds by *Averill v Bay City Justice of the Peace*, 74 Mich 296 (1889), as stated by *In re Slattery*, 310 Mich 458, 465-466 (1945).

At common law, the sheriff's duties were similar to that of constables, who were "the local peace officers of their vicinage, the ministerial officers of justices of the peace, and the bailiffs of courts of record of criminal jurisdiction in the county." *Allor*, 43 Mich at 103. "English sheriffs (or 'shire-reeves') were the King's 'reeves' (officers or agents) in the 'shires' (counties), at least after the Norman Conquest in 1066." *McMillian v Monroe Co*, 520 US 781, 793; 117 S Ct 1734; 138 LE2d 1 (1997). Thus, "[a]lthough chosen locally by the shire's inhabitants, the sheriff did 'all the king's business in the county,' and was 'the keeper of the king's peace.' " *Id.* (citations omitted). " 'In the exercise of executive and administrative functions, in conserving the public peace, in vindicating the law, and in preserving the rights of the government, he (the sheriff) represents the sovereignty of the State and he has no superior in his county[.]' " *Id.* at 794, quoting 1 Anderson, A Treatise on the Law of Sheriffs, Coroners and Constables, § 6, p 5 (1941). Our Supreme Court in *White v East Saginaw*, 43 Mich 567, 570; 6 NW 86 (1880), quoting *People v Edwards*, 9 Cal 286 (1858), described the sheriff's common-law duties as including, " 'the execution of the orders, judgments, and process of the courts; the preservation of the peace; the arrest and detention of persons charged with the commission of a public offense; the service of papers in actions,' " and being " 'more or less directly connected with the administration of justice . . . .' " And, in *Brownstown Twp*, 68 Mich App at 249, the Court observed:

> Michigan has codified the common law duties of the sheriff with little variance. For instance, sheriffs may execute all lawful orders and process of the circuit courts of this state. MCLA 600.582. Sheriffs have charge and custody of the county jail and its prisoners. MCLA 51.75. Likewise, statutory law impliedly recognizes the duty of

the sheriff to serve process in civil or criminal cases, preserve the peace, and apprehend persons committing a felony or a breach of the peace, because the sheriff may recruit suitable aid in performing these functions. MCL 600.584. [Citations omitted.]

Plaintiffs cite no authority for the proposition that the sheriff's statutory ability to discharge deputies without cause was among the common-law powers of the sheriff. But even assuming that the common law recognized that the sheriff had such power, plaintiffs present no meaningful argument that the power of discharge without cause is essential to the common-law legal character of the office of sheriff, or that its legislative regulation would destroy the powers of the sheriff to perform the known common-law "duties and powers of the sheriff in a way which changes the legal character of the office." *Bensinger*, 122 Mich App at 444. If the sheriff's discretion to appoint and remove deputies at will is purely statutory, then surely pursuant to its constitutional authority, Const 1963, art 7, § 4 (the sheriff's "duties and powers shall be provided by law"), the Legislature may impose reasonable limitations on the statutory authority of the sheriff to appoint and remove deputies at will.

The Michigan Sheriffs' Association, as amicus curiae, does cite authority in support of plaintiffs' position that a sheriff's common-law authority includes appointing and removing deputies at will, specifically, 1 Anderson, Sheriffs, Coroners and Constables, §§ 60, 85, and 145, pp 55-56, 76-77, and 142. In *Rucker v Harford Co*, 316 Md 275, 290; 558 A2d 399 (1989), Maryland's highest court, in concluding that a sheriff and deputy sheriffs were state officials, cited the same authority and opined, "[a]mong the common-law powers and duties of a sheriff was the duty to appoint, direct, and remove deputies." We observe that the *Rucker* Court also noted

that "[t]hese common law duties have been regulated somewhat by the [Maryland] General Assembly. Thus, statutes prescribe the number of deputies a sheriff may hire, mandate the training deputies are to receive, and limit a sheriff's power to fire a deputy at will." *Id.* at 290-291 (citations omitted).

As noted already, our Constitution authorizes the Legislature to alter or abolish the common law. Const 1963, art 3, § 7. And both this Court and our Supreme Court have recognized the Legislature's authority to place reasonable limits on the statutory authority of sheriffs under MCL 51.70 to appoint and remove deputies at will. See *Locke v Macomb Co*, 387 Mich 634, 639; 199 NW2d 166 (1972) (holding that an act adopted by the Legislature establishing a civil service system for sheriffs' departments in certain counties, MCL 51.351 *et seq.*, superseded MCL 51.70); *Cyrus v Calhoun Co Sheriff*, 85 Mich App 397, 400; 271 NW2d 249 (1978) (holding that MCL 338.1726(2), prohibiting discharge based solely on the results of a polygraph test, limited a sheriff's authority under MCL 51.70); *Nat'l Union of Police Officers*, 93 Mich App at 83-89 (holding that the sheriff's power to hire, fire, and discipline deputies under MCL 51.70 may be limited by a collective bargaining agreement [CBA] entered into under the public employment relations act [PERA], MCL 423.201 *et seq.*); and *Bensinger*, 122 Mich App at 444-446 (upholding an arbitration ruling that had ordered the reinstatement with back pay of a fired deputy but had not required that the sheriff delegate any law enforcement powers to the reinstated deputy), following *Nat'l Union of Police Officers*.

Although this Court has recognized the Legislature's authority to reasonably limit the sheriff's statutory authority to appoint and remove deputies at will, it also

has respected the sheriff's exercise of discretion regarding the manner in which the sheriff performs his or her duties and to whom the sheriff delegates his or her law enforcement powers. In *Labor Mediation Bd*, 25 Mich App at 161-162, the Court addressed the issue of the enforcement, under § 16 of PERA, MCL 423.216, of a decision finding the sheriff guilty of an unfair labor practice in discharging a deputy and ruling that the deputy should be reinstated with back pay as a road patrol officer. The Michigan Labor Mediation Board would not accept the sheriff's offer to reinstate the deputy "at his former pay, with the same hours, same leave, and any other fringe benefits," but assign him "to the duties of turnkey of the jail." *Id*. at 161. This Court observed that "for the sheriff to conduct his office in an orderly fashion, it is necessary for him to determine which deputy shall be assigned to certain duties." *Id*. at 164. This Court held that the sheriff's compromise complied with the labor board's original ruling, opining:

> It is not the prerogative of deputies to choose their duties . . . . Inasmuch as the sheriff is the chief police officer having to do with law enforcement in the county, he should not be hampered in his administration of the office by any agency or board as to the actual assignment of duties to be performed by a sheriff's deputy. [*Id*.]

The Court in *Nat'l Union of Police Officers*, 93 Mich App at 89, employed similar reasoning and compromise between the sheriff's discretionary law enforcement duties and limitations placed on the sheriff's statutory authority to revoke the appointment of a deputy. The Court held that "the sheriff's power to hire, fire and discipline is not absolute" and "is limited by PERA." *Id*. Nevertheless, the Court held "the matter of which of [the sheriff's] deputies shall be delegated the powers of law enforcement entrusted to him by the constitution is

a matter exclusively within [the sheriff's] discretion and inherent in the nature of his office, and may neither be infringed upon by the Legislature nor delegated to a third party." *Id.* (citations omitted). In *Bensinger*, an arbitrator, appointed pursuant to a CBA grievance procedure, ordered the reinstatement with back pay of a discharged deputy sheriff. The circuit court upheld the arbitrator's order except that the sheriff was not required to reinstate the deputy's law enforcement powers. The *Bensinger* Court affirmed the circuit court, opining *"Nat'l Union of Police Officers* represents a delicate balancing of the constitutional roles of the sheriff and the Legislature and no convincing reason to disturb that balance has been presented here." *Bensinger*, 122 Mich App at 445-446.

Plaintiffs also argue that the prosecutor's review under the VPA of a sheriff's exercise of discretion to appoint or remove deputies would be unconstitutional under the separation of powers doctrine, citing *Beadling*, 106 Mich App at 536-537. That case held that Const 1963, art 3, § 2 would not permit the Governor to review, under the VPA, the Legislature's discharge of one of its employees.[7] "The concept of separation of powers would be violated if the executive branch was [sic] allowed to judge the competency of a discharged employee of the legislative branch and order reinstatement." *Beadling*, 106 Mich App at 536. The constitutional principle of the separation of powers does not apply to one executive branch officer (the prosecutor) reviewing whether another executive branch officer (the sheriff) complied with MCL 35.402, limiting the

---

[7] Const 1963, art 3, § 2 states, "The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."

removal, transfer, or suspension of honorably discharged veterans.

Finally, the reliance of plaintiffs and amicus curiae on *Abt v Wilcox*, 264 Mich 183, and *Washington ex rel Day v King Co*, 50 Wash 2d 427; 312 P2d 637 (1957), is misplaced. In *Abt*, our Supreme Court held that a deputy sheriff, an honorably discharged veteran who had been appointed by a sheriff whose term had expired, did not have a right under § 2 of the VPA to be reinstated as a deputy of the new sheriff. The Court opined, "[i]f we concede . . . that the office of sheriff is a 'public department' . . . and that a deputy sheriff could not be removed or suspended without cause by the sheriff during his term of office, it does not follow that the appointment does not terminate on the expiration of the term to which the sheriff has been elected." *Abt*, 264 Mich at 185. The Court concluded that the deputy's "term of office expired . . . with that of the sheriff who appointed him, and the order denying the writ of mandamus to reinstate him is affirmed." *Id.* at 186. The *Day* case, similar to *Abt*, involved deputies of a former sheriff seeking to compel reappointment by the newly elected sheriff under that state's VPA. *Day*, 50 Wash 2d at 427-428. The Court held that "[t]he deputies of the former sheriff . . . cannot tie the hands of succeeding sheriffs." *Id.* at 430. Neither *Abt* nor *Day* has any application to the facts of this case, which involves the midterm discharge of a deputy by the appointing sheriff.

The other issues the parties discuss are rendered moot by our conclusions that the VPA is constitutional as applied to deputy sheriffs and is a reasonable restriction on the otherwise absolute discretion conveyed to sheriffs by MCL 51.70. In addition, although the parties argue the merits of the prosecutor's ruling, the circuit

court has yet to address them. Accordingly, we vacate the writ of superintending control and remand to the circuit court to consider in the first instance the merits of plaintiffs' appeal of the prosecutor's order. We do not retain jurisdiction. Because a question of public policy was involved, no costs are taxable under MCR 7.219.

MARKEY, P.J., and BECKERING and M. J. KELLY, JJ., concurred.